UNITED PRINTING MACHINERY CO. v. CROSS PAPER FEEDER CO.

(District Court, D. Massachusetts. February 2, 1915.)

No. 569.

PATENTS ☜202—ASSIGNMENT—EFFECT AS ESTOPPEL.

The owner of a patent cannot sell and assign his rights thereunder to another, and by means of a suit for infringement of an older and broader patent, subsequently acquired by him and covering the same invention, deprive his assignee of the full benefit of what he purchased.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 281–289; Dec. Dig. ☜202.]

In Equity. Suit by the United Printing Machinery Company against the Cross Paper Feeder Company. On final hearing. Decree for defendant.

J. Sidney Stone, of Boston, Mass., for plaintiff.
Alfred H. Hildreth, of Boston, Mass., for defendant.

HALE, District Judge. This is a suit in equity, brought for the infringement of the Philpott & Briggs United States letters patent No. 626,631, granted June 6, 1899, the application for which was filed in the Patent Office October 6, 1896. The patent is for a paper-feeding machine.

In paper-feeding machines of the continuous feeder type, the subject-matter of the invention is the employment of a pressure-roller device, bearing against the sheets, as they pass from the supply-table to the feed-table.

Claims 1 and 2 of the patent are claimed by the complainant to be infringed by the defendant. These claims are as follows:

"1. The combination with the feed-table, the supply-table, and the feed-wheels arranged at one end of the supply-table and adapted to feed the sheets from the supply-table to the feed-table, of a pressure-roller which bears against the sheets as they pass from the supply-table to the feed-table, a rocking support in which said roller is mounted, a gear-wheel mounted concentric with said roller, an intermeshing gear-wheel mounted concentric with

the pivot of said rocking support, and a driving mechanism whereby said intermeshing gear-wheel is driven from the shaft of said feed-wheels, substantially as set forth.

"2. The combination with the lower feed-table, the upper supply-table, and the feed-wheels arranged on a shaft at one end of the supply-table and adapted to feed the sheets from the upper to the lower table, of pressure-rollers bearing against the sheets as the latter pass over the feed-rollers, and mounted on a transverse shaft, rock-arms provided with bearings in which the pressure-roller shaft is journaled and hung upon a supporting-rod, a chain belt passing around sprocket-wheels mounted, respectively, on the feed-wheel shaft and the supporting-rod, and intermeshing gear-wheels secured, respectively, to the pressure-roller shaft and the sprocket-wheel mounted on the supporting-rod, substantially as set forth."

The defense relied upon by the defendant is that the complainant is estopped to prosecute this suit by reason of the fact that it had previously sold to the defendant the patent covering the same mechanism now alleged to infringe the patent in suit, subsequently acquired by the complainant.

On August 16, 1911, the complainant sold to the defendant the Briggs patent, No. 609,954, the White patent, No. 659,907, and the Briggs & Cross patent, No. 613,793.

The testimony shows that the price paid was $50,000. The amount paid, however, may be immaterial as to anything in issue in this case. By the terms of the assignment, the complainant in this case sold to the defendant "the entire right, title, and interest in and to the invention therein described and claimed." It covenanted that it was the lawful owner of the letters patent, and that the patent was free and clear, except for certain specified licenses. It released the Cross Company and all purchasers of its machines from all claims and demands which have accrued, or which might accrue, on account of the infringement of letters patent, or any of them, by the Cross Paper Feeder Company.

The defendant's machine—the alleged offending machine—as constructed both at the time of the assignment and at the present time, embodies the invention defined in claim 7 of the Briggs & Cross patent, No. 613,793. The claim under which the machine is constructed is as follows:

"7. The combination with the lower feed-table, the upper supply-table, and the feed-wheels mounted on a shaft and adapted to feed the sheets from the supply to the feed-table, of pressure-rollers bearing against the sheets opposite the feed-wheels and mounted on a shaft, rock-arms rigidly secured to a rock-shaft and provided with bearings in which the shaft of the pressure-rollers is journaled, and driving mechanism whereby the pressure-rollers are driven from the shaft of the feed-wheels, substantially as set forth."

It appears in testimony that on May 19, 1914, the Cross Paper Feeder Company brought suit against the United Printing Machinery Company, alleging infringement of the Briggs patent, No. 609,954, and the White patent, No. 659,907. This suit is numbered 543 in this court, and has already been heard and decided by the court. 220 Fed. 313. In July, 1914, the United Printing Machinery Company purchased the Philpott & Briggs patent, No. 626,631, in the open market, and brought suit upon it.

It will be seen that claim 1 of the patent in suit is of a somewhat broader character than claim 7 under which the defendant's machine is built; but it will be found that the invention defined in claim 7, and embodied in the defendant's machine, shows the same invention as that described in the claims of the patent in suit. It was this invention of which the complainant covenanted it was the lawful owner, and that it had a good right to convey, and that the invention was free from all incumbrances. It was this mechanism which constituted one of the inventions sold by the complainant to the defendant. The complainant now seeks to prevent the defendant from using this mechanism. In order to prevent its use, it sets up an after-acquired patent of broader scope covering the same structure.

The defendant says that, after the complainant has sold to it the right to use this invention and improvement, and while still retaining the consideration for the same, it ought not to be allowed to restrain the defendant from using that improvement; it ought not to be permitted to set up a broader patent on the main invention, and thereby prevent the defendant from using the improvement sold to it by the complainant.

In Walker on Patents, § 313, it is said:

"Where a person sells a patented machine to another without having any interest in or under the patent, he will be estopped from prosecuting his vendee for infringement on the basis of any after acquired title. And where a person sells a patent which employs an invention which infringes a prior patent, the person selling is estopped from bringing an action against his grantee for that infringement; and that estoppel operates as a license, not only as against the seller, but also as against owners in common with him of the prior patent."

Robinson on Patents, § 787, states the principle.

This equitable principle seems to be also sustained by authority. A patentee cannot sell his rights to another, and buy or obtain control of an older patent, and, through such older patent, dispossess his assignee of the full benefit of what he purchased. Faulks v. Kamp (C. C.) 3 Fed. 898; Curran v. Burdsall (D. C.) 20 Fed. 835.

Few cases can be found touching the precise question. The learned counsel for the complainant contends that the decisions of the Supreme Court do not sustain this doctrine; but he has cited no cases to sustain his contention.

I find no equity in a bill in which the complainant seeks substantially to keep what it has sold, and to prevent the defendant from having what it has bought. I am forced to the conclusion that there is no equity in the bill.

The bill is dismissed, with costs for the defendant.